**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| **COBREY BENNETT & MARYAM BENNETT** | ) | **Civil Action No. 2:15-CV-170** |
| **Plaintiffs,** | ) | **PLAINTIFFS' OBJECTION TO JUDGE FULLER'S Final R & R** |
| **v.** | ) | |
| **OCWEN LOAN SERVICING** | ) | |
| **Defendants** | ) | |

FILED IN CLERK'S OFFICE
U.S.D.C. - Gainesville
JUN 30 2016
JAMES N. HATTEN, Clerk
By: Deputy Clerk

**TILA RE-DISCLOSURE DEMAND**

We are demanding a TILA disclosure from Ocwen to explain the changes to our mortgage payments. Our payment was listed as $2,013.31 on the TILA disclosure, but our billing statements are for $1,735.46. We want the reason for this change and an explanation of how it affected the loan terms, as they were never disclosed. With our cause in litigation since 2013 and rescission as one of the original claims in Bennett I, we are invoking a toll of the statute of limitations.

TILA was meant to protect the consumers from predatory practices and to punish those who used them. Ocwen should not be rewarded for the behavior. Ignoring the truth of what they have done and continue to do to countless others only enables more of this behavior. If what they were doing is above board, why did the CFPB force them into a consent agreement?

**THE TRUTH AND THIS CASE**

If this Court cares about the truth of this case they will have to ask the questions needed to determine what that is and then take action. Ocwen counted on our ignorance of the mortgage industry to fool us into a loan we would not have taken otherwise. Just as they are counting on the Court's ignorance of the mortgage industry to abuse the litigation process, waste all of our time, and further their unethical behavior.

The Plaintiffs keep bringing up the same issues because they have yet to be addressed We have been in litigation for almost 3 years. During that time the facts have been pushed to the background, hidden by lies and feign ritual nuances that are getting in the way of the truth.

The R & R states we did not raise the issue of rescission in Bennett I. Which serves as proof of the lack of due diligence done on our behalf by this Court, and also why we keep raising the same issues.

At no point during our time before this Court, has the Court questioned any of Ocwen's unethical behavior, which is astounding! The Court has taken Ocwen's word in every instance. If Ocwen is a reliable company that does everything by the book, why do they have several cases just like ours pending in Georgia right now? Judge Fuller, in fact referenced one of Ocwen's cases in his R & R.

It appears as if the Court is using Ocwen as their point of reference regarding the mortgage industry instead of the law & facts of the case. We say this because Ocwen

stated that we did not raise the rescission issue in Bennett I and the Court seconded it. Yet, clearly rescission had been an issue raised in Bennett I because it was one of the causes of action. As a matter of fact, our August 9th rescission request was also listed as a fact in the initial complaint. *See* (Case 2:13-cv-243 D.E. 16 pg 24 ). *See also* (Case 2:13-cv-243 D.E. 22 pg 4 & 5).

For this reason Res Judicata does not apply. The Court never questioned Ocwen's actions listed in the complaint even though evidence as well as Ocwen's own words supports our claims.

I mean really, at this point, we have 2 allonges, 2 originators, 2 assignments of transfer, two different payoff amounts. 3 different principal balance amounts. Notice, while there are 2 of each aforementioned documents, none of them contain the same information. For instance, there are 2 separate allonges on record claiming Allquest purchased our loan and they are both filled with inconsistencies. In one allonge it has the Note Date listed as 11/26/2012 and signed by Sharman Baum Assistant Secretary of Allquest. In the second allonge, the date of note is listed as 11/19/2012 and is signed by Cheryl Crach, VP/Post Closing Manager of Allquest. Neither of them are valid because Allquest business operations were defunct at that time. According to Business & Finance Section Oscar (Bo) Fears. Sr. Assistant Attorney General Section Chief. *See* (Exhibit)

So the question then becomes, did they lie in the first set of paperwork or the second?

In short, either way Ocwen lied to us and the Court. Which should cause the Court to question all of Ocwen's actions to date.

We would also like to know why we as Pro Se litigants, are being held to higher standards than Ocwen? Ocwen has lied on record several times only to have the Court ignore the behavior, even upon it being pointed out by the Plaintiffs. The Court has ignored most of Ocwen's infractions, while highlighting the slightest procedural missteps by the Plaintiffs. We demand that the Court explain why this is.

**Contractual Breaches The Court Has Failed To Address & Demand Answers For**

**We have proven beyond a shadow of a doubt**:

- Ocwen misused our escrow funds when they breached our contract in March of 2013 by failing to pay our homeowners insurance, which caused it to lapse. Thus, causing the loan to default. Why hasn't the Court addressed this even though we provided evidence to support this?
- Ocwen has admitted to giving us inaccurate QWR disclosures multiple times claiming RPM is the originator of our loan. We have also given the Court evidence of RPM reps stating they can not originate loans in Georgia, and this too was ignored. Is the Court saying that it is ok for Ocwen to do this when the law says otherwise? If so, why?
- Ocwen has admitted to misapplying our payments and charged us fees, due to these misapplications, which is highly unethical. Yet, when this was pointed out

to the Court by the Plaintiff, the Court simply stated, Ocwen returned the fees with no admonishment for Ocwen's behavior in this instance either.

- Ocwen made changes to our mortgage that were not reflected in the official paperwork, in an attempt to placate us pass the initial 3 day rescission period. Ocwen did this because when we realized the loan was not as promised, we started asking questions.
- Allquest (a shell company of Ocwen) was conducting mortgage transactions in the state of Georgia while their license was revoked. There was no transfer of assignment from MSIII to Allquest made within 30 days. This is a violation of federal law. It also has a penalty of non-enforcement under state law O.C.G.A. § 44-2-1.[1] Yet, the Court seems to be ok with this.
- There are 2 separate allonges on record claiming Allquest purchased our loan and they are both filled with inconsistencies. In one allonge it has the Note Date listed as 11/26/2012 and signed by Sharman Baum Assistant Secretary. In the second allonge, the date of note is listed as 11/19/2012 and is signed by Cheryl Crach. Neither of them are valid because Allquest business operations were defunct at that time. Also, can anyone explain why are there two of them?
- The Court failed to enforce court issued subpoenas and then issued rulings without allowing the Plaintiffs a chance to obtain pertinent information needed to

1 State law requires recording; the only penalty seems to be non-enforcement and loss of priority. While this federal statute does not require recording, it does carry with it the specter of a private right of action against the lender under TILA, if the lender fails to provide notice to the borrow.

prove our cause. We demand an answer as to why the Court didn't enforce the subpoenas.

- The Court has ignored the inaccuracies in the Truth-in-lending disclosures and the billing statements issued by Ocwen. Which in spite of the Court's lack of action on this matter, is a material TILA violation. Just the fact that our payment does not match what is in the TILA disclosure proves the violation and our right to rescind.
- The Court did not question Ocwen about the false statements that were in the loan application. The application stated our principal balance with Selene was $325, 206 when it was filed. When we purchased our home, we had 2 mortgages. The first mortgage was for $300, 000, which Selene purchased from Citi in 2010. The deed valued at $300, 000 was canceled on 02/19/13. This is the loan that was refinanced. *See* (Exhibit)

At that point we had been paying the mortgage for over 4 years. By the time we did the refi, we had been paying on it for 6 years. When the application was submitted it did not reflect our payments, nor explain why there's an unaccounted $72,312 in the loan application. Selene had our monthly payments listed as $2010.07 and the principal was listed as $325, 206. They also had the second lien amount listed as $7, 663. So where did Selene get the $325, 206 principal amount? Who would go through all of this trouble to get a refinance to pay $3.24

more a month and an increase of our principal by $32,000 when we agreed to a loan that would lower our principal balance?

- Finally, the Court ignored the fact Ocwen, unlawfully and in a purposeful act with the intent to harm us, falsely filed reports to the Credit agencies, while our debt to them was in litigation. They did not list their filings as in dispute and the damages by law is a $1,000 per violation under the FCRA. Ocwen did this along with harassing us, they trespassed upon our property rights, and caused others to do so on their behalf.

## ABUSE OF PROCESS

Ocwen, used their FCRA violations to ruin our credit, to hinder our ability to tender our loan. The damage to our credit would make it harder for us to get a new loan. Then Ocwen tried to use the damage they caused to our credit as a means to hinder our ability to tender our loan & excuse away their noncompliance of TILA and a way to escape our valid right of rescission. This is an abuse of process.

With that said, we gave the Court all the information it needs to determine that we are entitled to relief. Due to this we are asking that the Court reconsider the evidence presented here, without the distraction of appearances, feelings, presumptions, procedural issues, & bias to just focus on the facts, the law & the correct way to address the wrongs committed against us.

## OCWEN'S GROUNDS FOR DISMISSAL FAILS ON ALL POINTS

The Court is once again telling the Plaintiffs what we believe to be true, instead of actually paying attention to what we are truly saying. This bias has been present since the beginning of Bennett I and continues to this day. With that said, we the Plaintiffs are going to tell the Court what we know to be true and not a theory. We just pray that this time it will be recognized for the truth it is.

1. The Plaintiffs sent Ocwen a notice of want to cancel on August 9, 2012.

   According to the **Consumer Financial Protection Bureau** to cancel a loan via a TILA rescission states, "If you decide to cancel you can notify us in writing. You may also use **"any"** written statement that is signed and dated by you that states your intent to cancel".[2]

   It does not mention the notification must state that is any type of rescission, let alone a TILA Rescission. It then goes on to say that, "You have a legal right under federal law to cancel this transaction, without cost, within 3 business days from whichever event occurs last."

   In our case, we have not received a TILA disclosure highlighting why our current payment amount and the payment amount listed on the TILA disclosure we were given on 11/19/2012 do not match. Giving us a right to rescind our loan.

   - **There is no required form of a TILA Notice**

     The CFPB notice of right to cancel also states the following, "If you cancel this new transaction, it will not affect any amount that you presently owe. Your

2 http://files.consumerfinance.gov/eregulations/ER22DE11.041-1.png

home is the security for that amount. Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure the increase of credit. We must also return any money you have given to us or anyone else in connection with this new transaction.

You may keep any money we have given you in this new transaction until we have done the things mentioned above, but you must then offer to return the money at the address below. If we do not take possession of the money within 20 calendar days of your offer, you may keep it without further obligation. It does not specify what should be in the notice, or any specifics of how it should be worded. Only that you want to cancel and sign and date it. *See* (case 2:13-cv-243 D.E. 22 p 5 D.E. 16 p 15 & 24,)

2. The Court claims the Plaintiffs, failed to bring an action within the statute of limitations, this is simply not true or correct as can be seen in Bennett I. Once we sent notice of want, all liability shifted from the Plaintiffs to Ocwen, as stated in 15 U.S.C. § 1635 (b). This, further supports what was stated on the CFPB's website.

According to the law and the governing body of said law, Ocwen, upon their receipt of our notice had to do the following: ***Return of money or property following rescission***: **When an obligor exercises his right to rescind under**

**subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the CREDITOR shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.**

The regulations of the bureau indicate the disclosures have to be correct. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Bureau, to any obligor in a transaction subject to this section the rights of the obligor under this section. Those regulations require the information to be accurate.

We were not given new disclosures to inform us of how the deferring payment listed on the initial Truth-in-lending disclosures and the actual payment listed on our payment statements from Ocwen, would effect the terms of the loan we agreed to. Making this event the latest/last occurring event. Proving our rescission is timely, valid and lawful.

Has Ocwen provided a second set of right to cancel notices and/or corrected re-disclosed truth-in-lending statements signed by the Plaintiffs stating our payments would be $1,734 instead of $2,013.31 in order to reflect the changes

that were not included in the disclosures provided on 11/19/12? If not, this event has yet to occur. Thus granting us an extended right of rescission.

3. The failure to re-disclose, is a material violation of TILA. Truth-in-lending disclosures, regulations includes requirements to be both true and correct. If any changes in the terms of the loan occur after the consummation, there should be new disclosures given to reflect those changes and consent of all parties to the changes. The disclosures given to us on 11/19/12 are incorrect, as evident the payment statements and erroneous TILA disclosures. These facts are material violations of TILA, & give rise to the Plaintiffs, an extended right of rescission.

4. The Court is correct in stating that the Plaintiffs must do more than simply indicate that they wanted to rescind. However, it is taken out of context. The requirement states, **"That upon completion of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value.**

If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court."

There is nothing in 15 U.S.C. § 1635 that states the Plaintiffs have to show proof of tender prior to the compliance of the Creditor in 20 days upon receiving notice. In fact, it was one of the questions raised in Jesinowski by Chief Justice Alito[3].

This was the response given by Jesinowski's counsel, "The rationale is that after the borrower has put forth all this money to get the loan in the first place, unless the borrower can get back those proceeds and have the security interest released, it's virtually impossible or at the very least extremely difficult to refinance in the middle of canceling the prior loan. The argument was made that once the Creditor did its part & tendered back the funds and the borrower wasn't able to make the Creditor whole, then the Creditor, could then seek the Court's intervention.

The question presented in Jesinowski, was whether a borrower exercises this right by providing written notice to his lender, or whether he must also file a lawsuit before the 3-year period elapses. This regime grants borrowers an unconditional right to rescind for three days, after which they may rescind only if the lender failed to satisfy the Act's disclosure requirements. Due to the disclosures erroneous nature, Ocwen failed to satisfy the Act's requirements.

Section 1635(a) explains in unequivocal terms how the right to rescind is to be exercised: It provides that a borrower "shall have the right to rescind . . . by notifying the creditor, in accordance with regulations of the Board, of his intention to do so" (emphasis added). The language leaves no doubt that rescission is effected when the

3 http://www.supremecourt.gov/oral_arguments/argument_transcripts/13-684_4425.pdf

borrower notifies the creditor of his intention to rescind. It follows that, so long as the borrower notifies within three years after the transaction is consummated, his rescission is timely. The statute does not also require a borrower to sue within three years.

Finally, respondents invoked the rescission common law doctrine. While it is true that rescission traditionally required either that the rescinding party return what he received before a rescission could be effected (rescission at law), or else that a court affirmatively decree rescission (rescission in equity). 2 D. Dobbs, Law of Remedies §9.3(3), pp. 585–586 (2d ed. 1993). It is also true that the Act disclaims the common law condition precedent to rescission at law that the borrower tender the proceeds received under the transaction. 15 U. S. C. §1635(b). **The negation of rescission-at law's tender requirement hardly implies that the Act codifies rescission in equity. Nothing in our jurisprudence, and no tool of statutory interpretation, requires that a congressional Act must be construed as implementing its closest common-law analogue. Cf. Astoria Fed. Sav. & Loan Assn. v. Solimino, 501 U. S. 104, 108–109 (1991). The clear import of §1635(a) is that a borrower need only provide written notice to a lender in order to exercise his right to rescind. To the extent §1635(b) alters the traditional process for unwinding such a unilaterally rescinded transaction, this is simply a case in which statutory law modifies common-law practice.** This information was taken directly from the Supreme Court's ruling on Jesinowski.[4]

The Court states, "At some point after giving notice of rescission, a borrower must

4 http://www.supremecourt.gov/opinions/14pdf/13-684_ba7d.pdf

make the appropriate rescission payment. The Court is correct in this assessment as well. That point to tender the Court is referring to, starts after the Creditor has fulfilled their obligation to the borrower. The Plaintiffs never expressed a belief that the loan would magically disappear.

Once Ocwen, disputed our rescission, it then became Ocwen's responsibility to bring the matter to the Court not ours. A fact supported by, Ocwen's counsel's website. "**No Lawsuit Required to Rescind:** ***U.S. Supreme Court Clarifies Mortgage Rescission Notification Requirements for Borrowers under TILA***"[5]

BABC also had this to say, "Any mortgage servicer receiving a written notice of rescission will now be forced to respond within twenty days and litigate the matter in court to prove compliance with TILA disclosure requirements. Ocwen did not file a lawsuit to dispute our claims, within the statue of limitations allowed by TILA and have thus missed their chance to do so.

It is quite amazing to see, with every order issued by the Court, how little attention was paid to the claims and the evidence with either of our cases against Ocwen.

The Court said that the Plaintiffs did not raise the issue of rescission until our case was filed in 2015. When in actuality, one of the 15 claims mentioned by Judge Fuller just happens to be rescission. So we would like the Court to explain again how rescission was not a claim before 2015.

5 http://www.bradley.com/no-lawsuit-required-to-rescind-us-supreme-court-clarifies-mortgage-rescission-notification-requirements-for-borrowers-under-tila-01-20-2015/#.V3CILLgrLIU

The Court also highlights that a rescission is meant to place the involved parties back in the positions they were in before entering into the agreement. The remedy for this would be for Ocwen to inform Selene that we want to reinstate our loan with them as it was prior to the refinance. Have Selene issue them a refund and then give us back all of our closing proceeds, payments, etc. No money traded hands during this transaction except payments we made. Making our tender to Ocwen one of equity.

**PRESCRIPTIVE TITLE**

Our issue of Prescriptive title stands due to one simple fact. Ocwen's/Allquest's failure to file an assignment of transfer within 30 days. It is a federal requirement to file a notice of transfer of sale. The failure to notify is a TILA violation, as well as a violation of The Helping Families save their home act of 2009. The penalty for failure to notify under the Helping Families save their home act, invalidates the lien on the note. Making our color of title claim the only legitimate claim on our property.[6]

**THE FACTS OF THIS CASE HAVE NOT CHANGED**

1. The paperwork filed with HUD by the originator was falsified, in order to obtain a government insured loan. Our situation did not qualify for the assigned loan. We were targeted and discriminated against, because our loan was sub-prime.

2. Ocwen never disclosed the information needed to contact the note holders, in any of their replies to multiple request QWR by which is required by RESPA.

6 https://www.hunton.com/files/News/1e9ca64b-d9cc-458f-9adc-31559958f24a/Presentation/NewsAttachment/c99bf8c8-9399-49c0-999e-780012309df2/mortgage-regulatory-update-aug2015.pdf

## CLARIFICATION

With that said, we are seeking to clarify, that the Court recognizes ruling in favor of the defendants supports all of Ocwen's improper actions listed below. Thereby are willing to completely ignore all of our irrefutable evidence. The amount of evidence is so insurmountable, that there is no way Ocwen's actions are lawful.

**List of facts that have been ignored since Bennett I**:

- Allied/Allquest Home Mortgage's license was revoked a year before they purchased our loan. This fact alone is more than enough reason for the Court to rule in our favor. *See* (Exhibit A)
- The Court ignored the fact that Ocwen took money that was intended to pay our homeowners insurance and misused it. Leaving us to foot the bill to avoid a lapse.
- Ocwen harassed us for late payments when they were responsible for failing to post the payments timely.
- Failing to file an assignment of transfer violations under The Helping Families save their home act of 2009 made Ocwen's lien void.
- Ocwen filed both non-compliant and falsified paperwork with the Forsyth County Clerk of Court.
- Ocwen & cohorts filed false claims with HUD and thereby violated the false claims act.
- The Court Completely ignored the inconsistencies in our origination paperwork.

Our paperwork states our **principal balance on this loan was $325,206 on November 2012**. Which is contrary to our last billing statement from Selene, which states our **principal balance as of October 2012 was, $252, 894.** There is still no explanation of how our principal balance went from $252, 894 to $284, 900.

- The Court failed to enforce court issued subpoenas and then issued rulings without allowing the Plaintiffs to obtain pertinent information needed to prove our cause which nullifies Res Judicita. How can an issue be considered settled if the Court never addressed the issue?
- The Court ignored the slander and defamation of Plaintiffs, who have no history of wrongdoing of any kind. While turning a blind eye to Ocwen's misconduct, that has been public knowledge for years.
- The Supreme Court ruled in Jesinowski's favor to honor TILA for its intended purpose. To give consumers a way to fight back against predatory practices of businesses without spending years in litigation. As is the case here. This fact is further proven by TILA requiring all proceeds regarding the loan be returned to consumer within 20 days to prevent further economic injury to the consumer.
- This Court is ignoring the purpose/spirit of the laws that are being violated and focusing more on procedure. Which has allowed for our prolonged pain and suffering, including prolong financial harm. In essence, helping Ocwen victimize

us.

- The Court is ignoring that the only valid claim on our home is ours, under the color of title.
- This Court is ignoring, that the TILA disclosures are inconsistent with the loan the Plaintiffs signed and that there were no new disclosures delivered to the Plaintiffs. Yet, another reason to rescind our loan under TILA.
- Finally, the Court is ignoring the fact Ocwen, unlawfully and in a purposeful act with the intent to harm us, falsely file reports to the Credit agencies the whole time this issue was being litigated. They did not list their filings as in dispute and the damages by law is a $1,000 per violation under the FCRA.

## CONCLUSION

By not following and enforcing the laws, what this Court is doing, will encourage more of this behavior by businesses, not deter it. This Court is showing the populace that the law is more of a suggestion, that Ocwen can follow or choose not to upon will.

We have once again outline the facts that were never addressed by the Court. Some of which are so egregious, that it would be shameful to rule in Ocwen's favor. The Court questioned why Plaintiffs didn't point out certain facts sooner. The answer is, we did, we were just ignored. Then the Court hindered our ability to obtain key information by not enforcing the Court issued subpoenas, which obstructed our discovery without due cause.

The Court has not addressed the aforementioned issues. Instead, Along with the Defendants, chose to focus on procedural folly. Which steered the focus from the material violations, which were highlighted here.

We trusted Ocwen et al. to do the right thing. That trust was violated, which is why we requested a rescission. Their refusal to honor our request is why we sought the Court's intervention. This has always been the core of our complaint. Once trust is violated, it should be corrected not ignored. We will not bear the burden of Ocwen's misconduct. We were upholding our word. Ocwen breached the agreed upon terms in March of 2013. We, in an act of good faith, attempted to give Ocwen 5 months, to address their behavior. They did not and we filed suit. Their failure to litigate the matter in court to prove compliance with TILA disclosure requirements within the statute of limitations has barred them from doing so.

Due to all the information contained in this reply, we pray the Court will give this matter the attention it deserves. This farce of Ocwen's has gone on long enough and it must end. We pray the Court do what is right and that their determination of what is right is done so based upon the law and the evidence before the Court and not Ocwen's say so.

Respectfully submitted this 29th day of June, 2016.

/s/ Cobrey & Maryam Bennett

Cobrey & Maryam Bennett
965 Summerfield Dr

Phone: 678-689-9601
email: maryamthomas@hotmail.com

Cumming, GA 30040

The Plaintiffs hereby declares that a copy of this motion will be sent to defense counsels on the same day a copy is mailed to the court.

/s/ Cobrey & Maryam Bennett June 29, 2016

Cobrey and Maryam Bennett
Pro Se Litigants
965 Summerfield Dr
Cumming, GA 30040
Phone: 678-689-9601
Fax: 770-887-3109
Email: maryamthomas@hotmail.com

*PRESS FIRMLY TO SEAL*

**Cobrey & Maryam Bennett**
**965 Summerfield Dr**
**Cumming, GA 30040**

United States Courthouse & Federal
121 Spring Street SE Room 201
Gainesville, GA 30501-3789

E

U.S. POSTAGE
$22.95
PME 1-DAY
30040 0007
Date of sale
06/29/16
06 2S00
08205322
SSK
840460629171040

**PRIORITY MAIL EXPRESS 1-DAY™**

SIGNATURE REQUIRED
SCHEDULED DELIVERY 06/30/2016 BY 3:00PM
0 lb. 12.10 oz.
**0007**

**SHIP TO:**

121 SPRING ST SE STE 201
GAINESVILLE GA 30501-3789

**USPS SIGNATURE TRACKING NUMBER**

9581 7000 1525 6181 0000 85

GUARANTE
GUARANTE
USPS TRAC
INSURANCE
PICKUP AV
SIGNATURE

...D INTERNATIONALLY

EMS

JUN 2 9

* Money Back Guarant ... destinations. See DMM and IMM at pe.usps.com for complete details.

+ Money Back Guarantee for U.S. destinations only.

EP13F July 2013 OD: 12.5 x 9.5

PS10001000006

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE

UNITED STATES POSTAL SERVICE